UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| ARTHUR ALFORD, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | No. 1:16-cv-00423-TAB-JMS |
| NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security Administration, | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Arthur Alford, Jr. appeals the Administrative Law Judge's denial of his application for Social Security benefits. Alford argues that the ALJ erred at step three by finding his I.Q. score is invalid, failing to send him for an additional examination, and failing to summon a medical expert. For the reasons set forth below, the Court finds these were not errors. Alford's brief in support of appeal [Filing No. 17] is denied and the Commissioner's decision is affirmed.

**I.    Background**

Alford was released from Pendleton Correctional Facility in early 2013 after at least six years of incarceration.[2] On May 28, 2013, Alford filed an application for supplemental security

---

[1] Nancy A. Berryhill is substituted for Carolyn W. Colvin as the proper Defendant pursuant to Fed. R. Civ. P. 25(d).

[2] The Court bases this fact on Alford's prison records, which span from September 19, 2007, to February 25, 2013. [Filing No. 14-1.] However, the ALJ did not make this finding and the record lacks consistency. For example, Alford initially reported to the Social Security Administration that he has been incarcerated for over 39 years. [Filing No. 14-6, at ECF p. 11.] Alford described himself to Dr. Schmutte as being arrested "a whole lot," for theft, fleeing, and burglary, with the most recent arrest resulting in his serving 15 months. [Filing No. 14-7, at ECF p. 147.] At the hearing, Alford testified that he was incarcerated for "a couple years." [Filing

income, alleging disability beginning May 23, 2013. Alford was referred to Dr. Schmutte for a consultative psychological exam, which occurred on June 28, 2013. This exam is the centerpiece of this appeal.

Dr. Schmutte's report begins by identifying that "Alford acknowledged that he understood the purpose of the evaluation to be related to his recent claim for disability benefits." [Filing No. 14-7, at ECF p. 146.] Alford described himself as angry, moody, and worried. Alford confided in Dr. Schmutte that he witnessed his mother's murder and that he believes he can see her occasionally. According to the report, Alford has never received professional mental health services, is not taking medication, has trouble sleeping, does not know his family health history, and does not use substances other than an occasional beer.

Dr. Schmutte's report describes Alford's social history, that he lives with his sister, is single, and has at least four children. Alford completed ninth grade and never pursued a GED, last worked at Hardee's and K-Mart in the 1990s, and never served in the military. Alford reported that he independently completes activities of daily living. His sister typically cooks and cleans for him, although he sometimes assists with laundry and microwaving food. Alford also relies on his sister financially because he has no bank account, no health insurance, and his only income is food stamps. Alford sometimes goes to the park with his son, but does not have friends, and he is emotionally supported by his sister, an aunt, and some cousins.

Dr. Schmutte noted that upon performing a mental examination, Alford's "responses were terse and reflected his level of annoyance that appear to be part of his everyday demeanor.

---

No. 14-2, at ECF p. 30.] Nevertheless, the precise length of time Alford spent incarcerated is a background fact that does not determine the outcome of this appeal.

At times he provided short snippy responses and then stared at the examiner as though the questions asked of him were absurd." [Filing No. 14-7, at ECF p. 148.] For example:

> For the season of the year, he curtly responded, 'I don't know.' He refused to estimate the time of day without looking at the clock. . . . He identified his location as 'in your office talking to you asking me questions.' . . . When asked to interpret the proverb 'Don't cry over spilled milk, he shrugged and responded 'If you spilled the milk I guess.' For the proverb 'Don't judge a book by its cover,' he responded with a shrug.
> \*\*\*
> When asked to count forward from 1 by serial three's, he stated that he did not understand the task and, due to his level of frustration and lack of motivation, the examiner made the decision to move forward.

[Filing No. 14-7, at ECF p. 149-50.]

Dr. Schmutte also attempted to administer an I.Q. test to Alford. However, Alford did not engage in the testing process. In particular, Dr. Schmutte noted:

> Toward the end of the evaluation, while sitting straight up in a chair, he closed his eyes and his head fell toward his chest and he was asleep for a few moments. The examiner allowed him to sleep and when he looked up he appeared to be startled. While it is likely that his intellectual functioning is below average, these scores are at least partially the result of his poor level of motivation and irritability.

[Filing No. 14-7, at ECF p. 149-50.] Dr. Schmutte reported Alford's full scale I.Q. score as 58, but she did "not feel that [she] can provide an accurate diagnosis with regards to his intellectual functioning" because of his poor motivation during administration of the I.Q. test. [Filing No. 14-7, at ECF p. 153.] Ultimately, Dr. Schmutte offered her diagnostic impression as "Antisocial Personality Disorder (IQ Scores Deferred)." *Id.*

The Social Security Administration denied Alford's application for supplemental security income at the administrative level initially on July 10, 2013, and upon reconsideration on September 23, 2013. Alford requested reconsideration and attended a hearing with his attorney on July 8, 2014, and testified before an ALJ. At the hearing, Alford's attorney requested a post-hearing consultative psychological evaluation to determine whether Alford's psychological

impairments meet a listing.  The ALJ denied the request, finding Alford is under no mental health treatment, takes no medication for mental impairments, a limitation for illiteracy is included in the Residual Functioning Capacity, and a consultative psychological exam is already part of the record.

The ALJ issued an opinion on October 9, 2014, concluding that Alford is not disabled. At step one, the ALJ found that Alford has not engaged in substantial gainful activity since the date of the application.  At step two, the ALJ found that Alford's severe impairments include antisocial personality disorder and borderline intellectual functioning.  At step three, the ALJ found that Alford's impairments do not meet or equal a listing.  At step four, the ALJ found that Alford has the RFC to perform a full range of work, with limitations for illiteracy and contact and interaction with others.  The ALJ found that while Alford technically has no past substantial gainful activity because he was not paid for working full-time as a kitchen helper while incarcerated, it is at least indicative of the type of work that he could perform if given an opportunity.  At step five, the ALJ relied on the testimony of a Vocational Expert to find that Alford is able to perform the work of a kitchen helper, checker, or store laborer.  The ALJ concluded Alford is therefore not disabled.  The ALJ's decision became final when the Appeals Council denied Alford's request for review.  This appeal followed.

**II.     Standard of Review**

The Court must uphold the ALJ's decision if substantial evidence supports her findings. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  "The substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120 (7th Cir. 2014).  The ALJ is obliged to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding

4

of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ need not mention every piece of evidence, so long as she builds a logical bridge from the evidence to her conclusion. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

### III. Discussion

The focus of Alford's brief is the ALJ's treatment of the psychological consultative report by Dr. Schmutte. The only objective medical evidence the ALJ relied on at step three was Dr. Schmutte's opinion. Essentially, Alford's argument is that the ALJ erred at step three because she failed to rely on the I.Q. score in Dr. Schmutte's report and failed to send him for an additional examination or call a medical expert. Alford argues the ALJ's failure resulted in an unsupported conclusion that he does not equal a listing. The Court disagrees.[3]

At step three, the ALJ's responsibility was to determine whether any of Alford's impairments meet or equal a listing and offer more than a perfunctory analysis. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Here, the ALJ found that Alford's antisocial personality disorder and borderline intellectual functioning do not meet or equal the listing for intellectual disability or the listing for personality disorders. To make this finding, the ALJ relied on the functional reports of Alford and his cousin Catherine Garner, prison records, and Dr. Schmutte's report. The ALJ found Alford did not meet or equal the listing for intellectual

---

[3] Alford also argues that the ALJ's hypothetical to the Vocational Expert "impermissibly failed to account for the quite severe functional limitations due to his mental impairments." [Filing No. 17, at ECF p. 9.] Alford fails to provide any meaningful legal analysis and cites no evidence supporting his assertion. This perfunctory, undeveloped argument is thus waived. *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013); *X.K.S.P. v. Colvin,* No. 1:15-CV-1831-DKL-TWP, 2016 WL 4708589, at *3 (S.D. Ind. Sept. 9, 2016); *Day v. Colvin*, No. 1:15-CV-1615-DKL-TWP, 2016 WL 4607446, at *3 (S.D. Ind. Sept. 6, 2016). And while the Court does address Alford's other arguments, they are skeletal at best. [Filing No. 22, at ECF p. 5-8.] Alford's reply brief is likewise lacking in substance. [Filing No. 26, at ECF p. 5-6.]

disability because she "cannot rely on the invalid IQ score," pointing to Alford's poor motivation, sleeping during the I.Q. test, and Dr. Schmutte's conclusion that she could not provide an accurate diagnosis. [Filing No. 14-2, at ECF p. 15.] Based on this analysis, the ALJ concluded that Alford's impairments did not meet or equal the criteria for either listing.

Alford argues the ALJ erred by rejecting his I.Q. score. Alford argues that if the ALJ relied on his I.Q. score, she would have concluded his impairments equal the listing for intellectual disability. This listing has four requirements: "(1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning initially manifested during the developmental period before age 22; (3) a valid verbal, performance, or full scale IQ of sixty through seventy; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05; *Adkins v. Astrue*, 226 F. App'x 600, 605 (7th Cir. 2007).

Alford argues the ALJ's rejection of his I.Q. score was erroneous because there was no conflicting psychological evidence in the record. However, it is unclear how conflicting psychological evidence would change the ALJ's finding that the I.Q. score in Dr. Schmutte's report is not valid. The ALJ found the I.Q. score was not credible, and she is in the best position to make that credibility determination. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). The Court will only overturn the ALJ's credibility determination if it is unreasonable or unsupported. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ reasonably considered Dr. Schmutte's opinion that Alford's I.Q. score was not a reflection of his true ability. The ALJ explained she found the I.Q. score invalid because Dr. Schmutte observed Alford's poor motivation to participate, and that he fell asleep during the test. The ALJ supported her determination that Alford's I.Q. score is invalid by citing Dr. Schmutte's

report. If Alford had cooperated with Dr. Schmutte, or even just stayed awake while she administered the I.Q. test, the reasonableness of the ALJ's conclusion might be more vulnerable to a legal challenge. Alford did not. Based on Dr. Schmutte's report, Alford's I.Q. score is only based on the part of the I.Q. test he completed. Dr. Schmutte warned that she felt unable to provide an accurate diagnosis based on the I.Q. test. Under the circumstances, the Court finds the ALJ's rejection of the I.Q. score reasonable and supported by the evidence.[4] Indeed, it would be ironic if Alford's non-cooperation with Dr. Schmutte somehow benefitted Alford.

Even if the Court found that Alford's IQ scores were valid, he fails to show other requirements. Alford argues that he experienced deficits in adaptive functioning before age 22. Alford points out that he was in special education classes as a child, but that does not automatically demonstrate deficits in adaptive functioning. Adaptive functioning refers to the ability to perform activities of daily living and social functioning. *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007). Deficits in adaptive functioning are shown by an inability to cope with the challenges of ordinary everyday life. *Id.* The ALJ considered evidence of Alford's special education and put restrictions in the RFC to accommodate illiteracy. [Filing No. 14-2, at ECF p. 15.] However, the record does not demonstrate that Alford's illiteracy poses serious challenges to his everyday activities like eating, dressing, and bathing. The ALJ found Alford is "able to feed himself, use the toilet, bathe, dress, and shave." [Filing No. 14-2, at ECF p. 14.] The ALJ noted that Alford's sister does much of the cooking and cleaning, but Alford reported that he can do them and occasionally helps. *Id.* Furthermore, the ALJ noted that Alford plays in the park

---

[4] Alford asserts that his problems taking the I.Q. test were part of his underdeveloped and deficient functioning. However, Alford points to no medical evidence supporting this assertion. Similarly, Alford fails to support his argument that the ALJ erred at step three because he and Dr. Schmutte had a personality conflict.

7

with his son and rides his bicycle to the store. *Id.* Given the evidence of Alford's activities and abilities, he fails to show that he meets the requirement of adaptive functioning deficits.

Overall, Alford's failure to meet his burden of proof represents the crux of the matter. At step three, Alford bears the burden of proving that his impairments satisfy or equal in severity to the elements of a listed impairment. *Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir. 2012); *Thorps v. Astrue*, 873 F. Supp. 2d 995, 1007 (N.D. Ill. 2012). An ALJ always has the duty to develop a full and fair record, but she is "entitled to assume that an applicant represented by an attorney is making his strongest case for benefits." *Thorps,* 873 F. Supp. 2d at 1007. The ALJ's duty to develop the record does not relieve Alford of his responsibility to support his claim. *Id.*

Alford argues it was the ALJ's duty to order an additional psychological examination. Alford's attorney requested this at the hearing and the ALJ addressed it in her order. The ALJ found an additional examination was unwarranted. [Filing No. 14-2, at ECF p. 11.] The ALJ found that the record already contains a psychological examination and Alford receives no mental health treatment. The ALJ explained that although Alford is illiterate, restrictions in the RFC accommodate that limitation. This response was reasonable. The regulations do not provide Alford with the option to redo his consultative examination if he disagrees with the report. Nor do the regulations provide for Alford to receive as many examinations as he deems necessary. Alford was represented by an attorney and he had the burden to present the ALJ with evidence that he is disabled, not the other way around. The ALJ did not err by denying Alford's request for an additional examination.

Alford also argues it was the ALJ's duty to call a medical expert to testify whether Alford's combined impairments equal a listing. This argument fails as well. Dr. Schmutte is considered an expert and her opinion is sufficient to determine medical equivalency. 20 C.F.R.

8

416.927(e); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004); *see also* S.S.R. 96–6p ("Findings of fact made by State agency medical and psychological consultants … regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence."). The ALJ relied on the expert opinion of Dr. Schmutte to conclude that Alford does not have an impairment or combination of impairments that equal a listing. [Filing No. 14-2, at ECF p. 14-15.] Dr. Schmutte's opinion is consistent with the state agency reviewing psychologists, who the ALJ found were entitled to great weight. [Filing No. 14-2, at ECF p. 17.] Thus, the ALJ was not required to call an additional medical expert.

Despite Alford's arguments that the ALJ should have sought more medical evidence to support a finding that his impairments meet a listing, it was Alford's burden to make this showing. The only psychological examination Alford presented to the ALJ was Dr. Schmutte's report. Alford was represented by an attorney at the hearing, which took place more than one year after Dr. Schmutte's examination. The ALJ was entitled to rely on Dr. Schmutte's report as Alford's strongest evidence in her step three finding. Alford's attorney may disagree with the results of the psychological examination, but it is the only evidence he presents. Tension between Alford and Dr. Schmutte does nothing to undermine the ALJ's findings or satisfy Alford's burden at step three. Dr. Schmutte's report sets forth her diagnostic impressions of Alford. The ALJ adequately analyzed Dr. Schmutte's report and explained her conclusion.

The evidence in the record, including Alford's hearing testimony, supports the ALJ's step three finding that Alford does not meet a listing. The ALJ pointed to Alford's lack of symptoms, treatment, cognitive deficits, or signs of mental illness while he was incarcerated. [Filing No. 14-2, at ECF p. 14; Filing No. 14-7, at ECF p. 18, 30, 36, 38, 40, 49, 54, 63, 68, 79, 81, 90, 134,

9

139.] The ALJ noted that Alford was able to work in the kitchen while incarcerated, and Alford testified he can likely still perform kitchen work. [Filing No. 14-2, at ECF p. 14, 31.]

Furthermore, the Court will only order the Commissioner to consider additional evidence "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993). Alford fails to demonstrate that any new and material evidence exists, let alone good cause for failing to present it to the ALJ or the Appeals Council. Thus, remand is not proper.

## V. Conclusion

For these reasons, Alford has not demonstrated that the ALJ failed to build a logical bridge from the evidence to her conclusion that Alford is not disabled. The Court agrees with the Commissioner that the ALJ did not commit reversible error. Accordingly, the Court denies Alford's brief in support of appeal [Filing No. 17] and affirms the Commissioner's decision.

Date: 2/6/2017

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana


Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov